IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**HANS M. KOHLS,**

Plaintiff,                                                  Civil Action No:       25-1807

v.                                                                 **JURY TRIAL DEMANDED**

**TESLA, INC.,**

Defendant.

## COMPLAINT

Plaintiff Hans M. Kohls ("Plaintiff" or "Mr. Kohls"), by and through his undersigned counsel, files this Complaint against Defendant Tesla, Inc. ("Defendant" or "Tesla"), and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Tesla's unlawful refusal to provide mandatory reasonable accommodation to Mr. Kohls, a Deaf Equipment Technician who excelled in Tesla's competitive START internship program but was terminated after requesting reassignment from a department where extreme environmental conditions damaged his hearing aids.

2. Mr. Kohls, who relies on hearing aids, scored 95.7% in Tesla's rigorous training program—placing him in the top tier of his cohort. He successfully performed Equipment

Technician duties in multiple departments at Tesla's Austin Gigafactory where his hearing aids functioned properly.

3. When assigned to the Casting Department, the extreme heat and humidity from high-pressure die-casting operations caused his electronic hearing aids to malfunction. Mr. Kohls requested reassignment to one of the vacant positions in departments where he had already demonstrated successful performance.

4. Instead of fulfilling its legal obligation under the Americans with Disabilities Act ("ADA") to reassign Mr. Kohls to a vacant position, Tesla terminated his employment just nine days after his accommodation request, explicitly telling him he was being "medically separated."

5. Mr. Kohls was the only intern in his cohort denied a full-time position—despite his superior qualifications and demonstrated abilities. Tesla's refusal to accommodate and its discriminatory termination violated the ADA, 42 U.S.C. § 12101 et seq., and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code § 21.001 et seq.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 (Federal Question).

7. This Court has supplemental jurisdiction over Plaintiff's TCHRA claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred at Tesla's Gigafactory in Austin, Texas.

## PARTIES

9. Plaintiff Hans M. Kohls is an individual who, at the time of the discriminatory acts, resided in Austin, Texas. Mr. Kohls is an individual with a disability (deafness) within the meaning of the ADA and TCHRA.

10. Defendant Tesla, Inc. is a corporation doing business in Texas, located at 1 Tesla Road, Austin, Texas 78725. Tesla is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5), and the TCHRA, Tex. Lab. Code § 21.002(8).

## ADMINISTRATIVE PREREQUISITES

11. Plaintiff has exhausted all administrative remedies required prior to filing this action.

12. On or about October 9, 2024, Plaintiff timely filed a Charge of Discrimination (No. 451-2024-04067) against Tesla, dual-filed with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division.

13. On August 12, 2025, the EEOC issued a Determination and Notice of Rights (Right to Sue letter).

14. This Complaint is timely filed within 90 days of receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

**A. Mr. Kohls' Qualifications and Hiring into the START Program**

15. Mr. Kohls is Deaf. His hearing impairment substantially limits the major life activity of hearing. He uses hearing aids, which, when functional, allow him to effectively communicate and hear necessary alarms, alerts, and verbal communication in workplace environments.

16. Mr. Kohls has a successful history of working in industrial environments, including at GST America, where he worked in a hot and loud environment for over a year without issue.

17. On or about February 19, 2024, Mr. Kohls applied for the Tesla START Technician Internship program, an intensive program designed to transition successful participants into full-time employment as Equipment Technicians at Tesla.

18. On his application, Mr. Kohls truthfully answered "yes" to whether he could receive safety signals using "auditory (hearing) sense." With his hearing aids functioning properly, Mr. Kohls can and does receive auditory safety signals—as he successfully demonstrated throughout his training in multiple departments at Tesla's Gigafactory.

19. On February 29, 2024, Mr. Kohls interviewed via Zoom with Yeimi Rodriguez, a member of the Casting Department. During the interview, Ms. Rodriguez observed Mr. Kohls' hearing aids and became aware of his disability.

20. Ms. Rodriguez specifically asked Mr. Kohls if he could work in a "hot environment." Mr. Kohls responded affirmatively, relying on his successful year-long experience in hot industrial conditions at GST America.

21. Neither the application nor the interview disclosed that the Casting Department's extreme heat and humidity conditions would far exceed standard industrial heat levels. The Casting Department utilizes high-pressure die-casting operations that melt aluminum at approximately 1,220°F. Mr. Kohls could not have reasonably anticipated these specific conditions would cause his hearing aids to malfunction until he experienced them firsthand.

22. Tesla hired Mr. Kohls into the START program on or about March 11, 2024.

23. Although Tesla later asserted Mr. Kohls was hired for the Castings track and that transfers were prohibited, Mr. Kohls was not informed at the time of hire that the program structure would preclude ADA-mandated reasonable accommodations, including reassignment.

**B. Mr. Kohls Excels in Training and Cross-Functional Shadowing**

24. The START program involved a rigorous 10-week course at Austin Community College (ACC), focusing on robotics and manufacturing.

25. Mr. Kohls excelled in the program, achieving a final grade of 95.7%, earning certification, and placing him in the top tier of his cohort.

26. Following the ACC course, Mr. Kohls participated in hands-on training at the Austin Gigafactory (GFTX), where he shadowed various departments, including Vehicle Validation and Drive Unit.

27. In these departments, the working temperatures were significantly cooler, his hearing aids functioned properly, and he performed successfully and communicated effectively without the need for an ASL interpreter.

28. Mr. Kohls demonstrated his ability to perform the essential functions of the Equipment Technician position—including equipment maintenance, troubleshooting, safety protocol compliance, and effective communication—in these suitable environments.

29. The ability to withstand the extreme heat specific to the Casting Department's die-casting operations is not an essential function of the Equipment Technician position generally, as evidenced by Equipment Technicians working successfully in numerous other departments at GFTX with standard industrial temperatures.

**C. The Environmental Barrier and Request for Accommodation**

31. Upon hiring, Mr. Kohls was assigned to the Casting Department at GFTX.

32. The Casting Department utilizes high-pressure die-casting machines to melt aluminum ingots, creating an environment of extreme heat and humidity.[2]

33. Upon starting in the Casting Department, the extreme heat and moisture caused Mr. Kohls' electronic hearing aids to malfunction.

34. The malfunction of his hearing aids prevented Mr. Kohls from reliably hearing safety signals in that specific environment. This was an environmental barrier related to equipment failure caused by extreme conditions unique to the Casting Department, not an inherent functional limitation on his ability to perform the job duties.

35. On or about June 12, 2024, Mr. Kohls submitted a reasonable accommodation request to Halie Richard (Human Resources), specifically requesting a transfer (reassignment) out of the Casting Department to a department where the environmental conditions would not damage his hearing aids.

**D. Tesla's Failure to Engage in a Good-Faith Interactive Process**

36. In response to his accommodation request, Tesla required Mr. Kohls to submit medical documentation regarding his disability and limitations.

37. Mr. Kohls fully complied and submitted the requested documentation on or about June 17, 2024.

38. Tesla subsequently determined it could not accommodate Mr. Kohls within the Casting Department, citing the environmental conditions.

39. However, Tesla failed to meet its obligation to consider reassignment as an accommodation of last resort, as required by the ADA. 29 C.F.R. § 1630.2(o)(2)(ii) ("Reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship").

40. Tesla never discussed with Mr. Kohls what positions were available or why reassignment was not feasible.

41. Tesla failed to inquire whether Mr. Kohls could perform in other departments—despite his documented success in Vehicle Validation and Drive Unit.

42. Tesla failed to explain why vacant Equipment Technician positions in other departments were unavailable.

43. Tesla failed to conduct an individualized assessment of Mr. Kohls' actual capabilities in suitable environments.

44. Tesla never explored whether alternative safety measures—such as visual alarms, vibrating alerts, or buddy systems—could address any safety concern in the Casting Department.

45. Instead of exploring reassignment, Tesla rigidly focused only on his inability to work in the Casting Department, prioritized its internal policies over its ADA obligations, and prematurely ended the interactive process.

**E. Tesla Terminates Mr. Kohls Despite Available Vacancies**

46. Tesla refused to reassign Mr. Kohls, claiming there were no open positions available and that the START program structure prohibited transfers.

47. These claims were pretextual. At the time of his termination, suitable vacant positions existed for which Mr. Kohls was qualified and already trained.

48. In June 2024, there were several departments such as Vehicle Validation and Drive Unit, where Mr. Kohls had successfully shadowed and performed Equipment Technician duties, had suitable working conditions and were observed to be understaffed, with employees confirming the need for additional personnel.

49. Furthermore, Tesla continued to post and hire for similar roles, including the Equipment Technician role for which Mr. Kohls was trained, immediately following his termination.

50. On or about June 20, 2024, ADA Specialist Sean Jamison met with Mr. Kohls and informed him that Tesla could not accommodate him and would be terminating his employment.

51. Mr. Jamison explicitly told Mr. Kohls that he was being "medically separated." This statement is confirmed by an audio recording (at the 10:23-minute mark) and a corresponding transcript (at the 7:22-minute mark) of the meeting.

52. By characterizing the termination as "medical separation," Tesla revealed it was terminating Mr. Kohls because he had a disability that required accommodation—not for any legitimate, non-discriminatory reason.

53. Mr. Kohls' termination was effective June 21, 2024—just nine days after his accommodation request.

54. Shortly after his termination, Mr. Kohls applied to two open positions at Tesla for which he was qualified. Tesla rejected both applications despite Mr. Kohls' recent completion of Tesla's own training program and his superior qualifications.

55. Mr. Kohls was the only participant in his START program cohort who did not receive a full-time job offer, despite his high performance (95.7% score) and qualifications.

56. Every other START participant received a full-time offer. The only distinguishing factor between Mr. Kohls and his peers was his disability and his request for reassignment as an accommodation.

57. As a result of Tesla's unlawful actions, Mr. Kohls has suffered significant financial damages, including the loss of health insurance while his wife was pregnant, and severe emotional distress.

**F. Mr. Kohls Did Not Pose a Direct Threat**

58. Mr. Kohls' request for reassignment was based on an environmental barrier—extreme heat damaging electronic equipment—not an inability to perform essential job functions.

59. In departments with standard industrial temperatures (Vehicle Validation, Drive Unit), Mr. Kohls' hearing aids functioned properly, and he reliably heard all safety signals, alarms, and communications without incident throughout his training period.

60. Tesla never conducted an individualized assessment based on reasonable medical judgment regarding: (1) the duration of any alleged risk; (2) the nature and severity of potential harm; (3) the likelihood of potential harm occurring; or (4) the imminence of potential harm, as required by 29 C.F.R. § 1630.2(r).

61. Any alleged safety concern was specific to the Casting Department's extreme environment and was entirely eliminated through the reasonable accommodation of reassignment to departments where the environmental conditions did not damage his assistive technology.

---

## CAUSES OF ACTION

### COUNT I: FAILURE TO PROVIDE REASONABLE ACCOMMODATION

**(Americans with Disabilities Act)**

62. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

63. The ADA defines discrimination to include "not making reasonable accommodations" to the known limitations of an otherwise qualified individual with a disability, absent undue hardship. 42 U.S.C. § 12112(b)(5)(A).

64. Reassignment to a vacant position is a required reasonable accommodation under the ADA. 29 C.F.R. § 1630.2(o)(2)(ii).

65. Mr. Kohls is an individual with a disability within the meaning of the ADA.

66. Mr. Kohls notified Tesla of his limitation caused by the extreme environment in the Casting Department and requested a reasonable accommodation: reassignment to a department where his hearing aids would function properly.

67. Mr. Kohls was a qualified individual. He possessed the requisite skills and certifications, having completed Tesla's rigorous START training program with a 95.7% score and earning certification. He demonstrated his ability to perform the essential functions of the Equipment Technician position—including equipment maintenance, troubleshooting, safety

protocol compliance, and effective communication—during his successful rotations in Vehicle Validation and Drive Unit.

68. Vacant Equipment Technician positions existed for which Mr. Kohls was qualified, including in Vehicle Validation and Drive Unit where he had already successfully performed. Tesla posted and filled Equipment Technician positions immediately following Mr. Kohls' termination and rejected his applications to open positions.

69. Reassignment would not have imposed an undue hardship on Tesla. Undue hardship requires a showing of "significant difficulty or expense." 42 U.S.C. § 12111(10); 29 C.F.R. § 1630.2(p). Tesla—a multi-billion dollar corporation with thousands of employees at GFTX and multiple departments with Equipment Technician positions—cannot credibly claim that reassigning one Equipment Technician to a vacant position would impose significant difficulty or expense.

70. Tesla's internal policies regarding the START program structure do not constitute undue hardship and do not supersede the mandatory obligation to provide reassignment as a reasonable accommodation under the ADA.

71. Tesla failed to provide the requested accommodation and instead terminated Mr. Kohls.

72. Tesla failed to engage in the required good-faith interactive process. 29 C.F.R. § 1630.2(o)(3). Tesla failed to discuss available positions, failed to explore reassignment despite regulatory requirements, and prematurely ended the process without meaningful engagement.

73. As a direct and proximate result of Tesla's failure to accommodate, Mr. Kohls has suffered damages.

## COUNT II: DISABILITY DISCRIMINATION—DISPARATE TREATMENT

### (Americans with Disabilities Act)

74. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

75. The ADA prohibits employers from discriminating against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a).

76. Mr. Kohls is an individual with a disability within the meaning of the ADA. Tesla was aware of Mr. Kohls' disability from his initial interview on February 29, 2024.

77. Mr. Kohls was a qualified individual as set forth in paragraphs 67 above.

78. Mr. Kohls suffered adverse employment actions, including the termination of his employment and the denial of a full-time position.

79. Tesla's actions were motivated by Mr. Kohls' disability. The circumstances give rise to an inference of discrimination:

a. **Temporal proximity:** He was terminated just nine days after his accommodation request;

b. **"Medical separation":** He was explicitly told he was being "medically separated," revealing the true motivation;

c. **Disparate treatment:** He was treated less favorably than his non-disabled peers, all of whom received full-time offers despite Mr. Kohls having superior qualifications (95.7% score, top tier performance);

d. **Sole exclusion:** He was the only START participant in his cohort denied employment;

e. **Post-termination rejection:** Tesla rejected his applications to open positions despite his recent completion of Tesla's training program; and

f. **Timing:** Tesla terminated him immediately after determining it would not provide reassignment—not for any performance or qualification-based reason.

80. Tesla's proffered reasons for the termination were pretextual:

a. **"No vacant positions":** Not true. Tesla posted and filled Equipment Technician positions following Mr. Kohls' termination and had documented staffing needs in departments where Mr. Kohls had successfully performed;

b. **"Program restrictions":** Internal business policies cannot override mandatory ADA obligations;

c. **"Safety concerns":** Contradicted by Mr. Kohls' successful performance in Vehicle Validation and Drive Unit where his hearing aids functioned properly and he heard all safety signals without incident; and

d. **"Medical separation" language:** Tesla's own characterization reveals termination because of disability, not for legitimate business reasons.

81. As a direct and proximate result of Tesla's discriminatory conduct, Mr. Kohls has suffered damages.

**COUNT III: RETALIATION (Americans with Disabilities Act)**

82. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

83. The ADA prohibits retaliation against an individual who has requested an accommodation. 42 U.S.C. § 12203(a).

84. Mr. Kohls engaged in protected activity when he requested a reasonable accommodation on June 12, 2024.

85. Tesla subjected Mr. Kohls to a materially adverse action by terminating his employment on June 21, 2024.

86. A causal connection exists between the protected activity and the adverse action:

　　a. **Temporal proximity:** Nine days between the accommodation request and termination;

　　b. **Sequence of events:** Mr. Kohls was performing successfully until he requested accommodation; Tesla terminated him immediately upon determining it would not provide reassignment;

　　c. **"Medical separation" demonstrates retaliatory motive:** Tesla revealed it was terminating Mr. Kohls because he had a disability requiring accommodation;

　　d. **Shifting justifications:** Tesla has offered inconsistent explanations, suggesting its true motive was retaliation; and

　　e. **Comparative treatment:** Every other START participant received a full-time offer.

87. Tesla's stated reasons for the termination are pretext for retaliation, as detailed above.

88.     As a direct and proximate result of Tesla's retaliatory conduct, Mr. Kohls has suffered damages.

89.     Tesla acted with malice or reckless indifference to Mr. Kohls' federally protected rights under the ADA, warranting an award of punitive damages.

## COUNT IV: DISABILITY DISCRIMINATION

### (Texas Commission on Human Rights Act)

90.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

91.     The TCHRA prohibits employment discrimination on the basis of disability. Tex. Lab. Code § 21.051.

92.     Plaintiff is an individual with a disability under the TCHRA and was qualified for the Equipment Technician position he held and sought.

93.     Defendant discriminated against Plaintiff on the basis of his disability by subjecting him to adverse employment actions, including termination and refusal to hire, as detailed above.

94.     As a direct and proximate result of Defendant's violation of the TCHRA, Plaintiff has suffered damages.

## COUNT V: FAILURE TO ACCOMMODATE

### (Texas Commission on Human Rights Act)

95.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

96. The TCHRA makes it an unlawful employment practice if an employer fails or refuses to make a reasonable workplace accommodation to a known limitation of an otherwise qualified individual with a disability, unless the employer demonstrates undue hardship. Tex. Lab. Code § 21.128.

97. Plaintiff requested a reasonable accommodation (reassignment).

98. Defendant failed and refused to provide this accommodation, failed to engage in a good-faith interactive process, and instead terminated Plaintiff.

99. The accommodation would not have imposed an undue hardship on Defendant.

100. As a direct and proximate result of Defendant's violation of the TCHRA, Plaintiff has suffered damages.

## COUNT VI: RETALIATION

### (Texas Commission on Human Rights Act)

101. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

102. The TCHRA prohibits retaliation against a person who opposes a discriminatory practice. Tex. Lab. Code § 21.055.

103. Plaintiff engaged in protected activity by requesting a reasonable accommodation.

104. Defendant retaliated against Plaintiff by terminating his employment shortly after his request.

105. As a direct and proximate result of Defendant's violation of the TCHRA, Plaintiff has suffered damages.

106. Defendant acted with malice or reckless indifference, warranting an award of exemplary damages under the TCHRA.

## WILLFUL AND INTENTIONAL CONDUCT

107. Tesla's violations of the ADA and TCHRA were willful, intentional, and undertaken with malice or reckless indifference to Mr. Kohls' federally protected rights.

108. Tesla employs ADA specialists, including Sean Jamison who conducted Mr. Kohls' termination meeting, demonstrating Tesla's awareness of its ADA obligations.

109. Despite this knowledge, Tesla:

a. Refused to consider reassignment despite clear regulatory mandates;

b. Prematurely terminated the interactive process;

c. Explicitly framed the termination as "medical separation," demonstrating awareness that disability was the motivating factor;

d. Rejected Mr. Kohls' subsequent applications to open positions despite his qualifications;

e. Treated Mr. Kohls less favorably than all non-disabled peers in his cohort; and

f. Prioritized internal policies over federal civil rights protections.

110. This conduct demonstrates Tesla acted with malice or reckless indifference, warranting punitive and exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hans M. Kohls respectfully requests that this Court enter judgment in his favor and against Defendant Tesla, Inc., and grant the following relief:

A. A declaration that Defendant's actions violated the ADA and the TCHRA;

B. An order requiring Defendant to instate Plaintiff into an appropriate Equipment Technician position in a department with suitable environmental conditions, with reasonable accommodations, or, in the alternative, an award of front pay;

C. An award of back pay from June 21, 2024 to the date of judgment, including:

i. Lost wages calculated at the rate offered to Equipment Technicians in Mr. Kohls' START cohort;

ii. Lost benefits including health insurance, retirement contributions, stock options, and other benefits provided to Equipment Technicians; and

iii. Pre-judgment interest on all back pay;

D. An award of compensatory damages for past and future non-pecuniary losses, including:

i. Severe emotional distress, anxiety, and depression resulting from discriminatory termination;

    ii. Mental anguish from being the only intern denied employment despite superior performance;

    iii. Humiliation and embarrassment from being "medically separated";

    iv. Loss of professional reputation and career opportunities;

    v. Harm to family relationships and stability, including loss of health insurance during his wife's pregnancy; and

    vi. Loss of enjoyment of life;

**E.** An award of punitive damages (under the ADA) and exemplary damages (under the TCHRA) for Defendant's malicious and/or recklessly indifferent conduct;

**F.** An award of Plaintiff's reasonable attorneys' fees and costs incurred in this action;

**G.** Pre-judgment and post-judgment interest; and

**H.** Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 10, 2025

                                      Respectfully submitted,

                                      */s/ Andrew Rozynski*

                                      By: Andrew Rozynski, Esq.
                                      EISENBERG & BAUM, LLP
                                      24 Union Square East, Penthouse
                                      New York, NY 10003
                                      Tel: (212) 353-8700
                                      Fax: (917) 591-2875
                                      arozynski@eandblaw.com

                                      *Attorney for Plaintiff Hans M. Kohls*